BEHAN *v.* MAYOR, ETC., OF THE CITY OF NEW YORK.

*(District Court, S. D. New York. June 8, 1885.)*

WHARVES—DAMAGE FROM SEWER—OBVIOUS DANGER.
  Where a canal-boat moored at a wharf belonging to the corporation, directly along-side and beneath the opening of a large main sewer, and during the following night was submerged and sunk from the great outpouring of water consequent upon a summer shower, *held*, that there was no negligence in the corporation, either in the construction, repair, or maintenance of the sewer, and that it was no nuisance to navigation. That liability to sudden danger of a discharge of water being visible and sufficiently obvious to a man of ordinary intelligence, *held*, that the owner could not recover of the city for the loss.

In Admiralty.
*Wilcox, Adams & Macklin*, for libelant.
*E. Henry Lacombe*, for the corporation.
BROWN, J. On the sixth of July, 1884, at about 1 o'clock A. M., the libelant's barge, loaded with coal, while lying along the end of the pier at the foot of Seventy-ninth street, on the East river, was flooded by a sudden rush of water through the main sewer, partly beneath which the boat then lay. The dock was a short crib-dock; the main sewer was a very large one, draining about 50 blocks; and at the place of discharge it was about five feet high, and about four feet broad upon its flat bottom, which was from one to two feet above low water.

The libelant's boat was consigned to Seventy-ninth street. It had arrived there on the thirtieth of June, and lay along the end of the wharf, outside of other boats, waiting for a chance to discharge, until the fifth of July, when it reached a position immediately against the end of the wharf, and under the sewer. During the 5th there were occasional light rains, and more or less of a continual discharge from the sewer, which the libelant observed. It was not sufficient to do any harm, and it did not occur to him that he was in danger from a sudden shower. This danger, however, was known to other boatmen. They were accustomed to take precautions against it, through the use of boards to keep off the water, or in fending off from the wharf. The libelant had never been there before, and it does not appear that any one told him of his danger.

At about 11 P. M. of July 5th there were indications of a heavy thunder shower. The thunder and lightning became sharp and heavy, and the libelant, to avoid seeing it, went down into his cabin. A heavy shower followed, and the libelant was startled by hearing the noise of water and by the trembling of his boat. As he started to

go up the cabin he met the water pouring down the companion way. In about four minutes, as he says, his boat was filled and sank.

It is impossible to hold, as it seems to me, that the sewer was not rightly and lawfully constructed, so as to empty at the end of this short dock. The sewerage had to be discharged somewhere, and this sewer was constructed by the city on its own property. It was not a nuisance. It was not an unlawful obstruction. The use of that dock for boats was subject to its use for the sewerage, as it visibly existed. The dock was not a pile-dock, so that the sewer could have been capped at the end, and the discharge of water effected at the bottom. Nothing was out of repair. The city collected wharfage for the use of this wharf from vessels that moored there; but there was no person in attendance to give notice of liability to a great discharge of water from the sewer in case of a sudden shower. Persons came and went as they chose, being liable only to a demand for such use of the wharf as they made. I do not think the city was bound to keep a person in attendance at the wharf to notify boatmen coming there that they must look out for the water that might be discharged from the sewer. The liability to this danger was sufficiently obvious from the great size of the sewer, which was itself an indication that at times large masses of water were expected to run through it. The sewer opening rose some four feet above the deck of the libelant's boat at low water. The visible approach of a heavy summer shower was itself a further indication of the impending liability to a sudden great outpouring of water. I think, therefore, the accident must be attributed to the want of proper caution by the libelant in respect to a danger which was visible and sufficiently obvious to a man of ordinary inteligence; that the libelant, in mooring there, did so subject to these obvious risks; and that no negligence is legally attributable to the corporation.

The libel is therefore dismissed; but without costs.